**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 3 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CARLOS L. CANEDO,

      Defendant-Appellant.

No. 99-3057
(D.C. No. 98-CR-10079-3)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, Circuit Judge, **KELLY**, Circuit Judge, and **McWILLIAMS**, Senior Circuit Judge.

In a second superceding indictment, Carlos L. Canedo, the appellant, Isidro M. Zazueta and Daniel N. Cantu were charged in eight counts with various drug and drug related crimes. Canedo was named as a defendant in four of the eight counts. In Count 1 Canedo was charged with conspiring from a date unknown to July 14, 1998 with Zazueta and Cantu and with others, both known and unknown, to distribute controlled substances, namely methamphetamine, in violation of 21 U.S.C. § 841(a)(1). In Count 5 Canedo and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Cantu were charged with distributing methamphetamine in June 1998 in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In Count 7 all three defendants were charged with distributing a pound of methamphetamine on July 14, 1998, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. In Count 8 Canedo and Cantu were charged with carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 2, 924(c).

In a joint trial with Cantu, Canedo was convicted on all of the four counts in which he was a defendant. He was later sentenced to imprisonment for 181 months to be followed by five years of supervised release. He now appeals his conviction and sentence.[1]

On appeal, Canedo contends that the district court committed reversible error in three particulars: (1) the district court erred when it allowed the government to introduce evidence of prior criminal acts by his co-defendant Cantu, in violation of Federal Rule of Evidence 404(b); (2) the government in its closing argument to the jury commented, over objections, on Canedo's failure to testify, thereby depriving him of his constitutional right not to testify; and (3) the evidence was legally insufficient to sustain any of his several convictions. We disagree and therefore affirm.

---

[1]Cantu appealed his conviction to this court. *United States v. Cantu*, No. 99-3056. That appeal was dismissed for lack of prosecution pursuant to 10th Cir. R. 42.1 on June 9, 1999.

## I. Other Crimes

David Zimmerman was a government witness at the joint trial of Canedo and Cantu. His testimony formed the basis for Count 5 of the second superceding indictment which charged Canedo and Cantu with distributing methamphetamine in June, 1998. In this regard, Zimmerman testified that in June, 1998, he made two purchases of methamphetamine from Canedo and Cantu. By way of some background, Zimmerman stated that he did not meet Canedo until early June, 1998, but that he first met Cantu in 1991 and had drug dealings with Cantu from that time on. Counsel for Canedo objected to such testimony on the grounds that Federal Rule of Evidence 404(b) had not been followed. Counsel for Cantu then joined in that objection, which was overruled. On appeal, Canedo argues that he is entitled to a new trial because Zimmerman testified that he had known Cantu since 1991 and had drug dealings with him in the ensuing years. We disagree.

The government argues here, as it did in the district court, that such evidence was not 404(b) evidence of other crimes or "bad acts," but, on the contrary, was "direct evidence" tying Cantu into a long standing conspiracy to distribute methamphetamine in the Wichita, Kansas area. Count 1 of the second superceding indictment charged Cantu, Canedo and Zazueta of conspiracy with others "known and unknown" from an unknown date in the past to July 14, 1998 to distribute methamphetamine. Zimmerman's testimony constituted direct evidence tying Cantu into such conspiracy at its very inception. The

fact that Canedo did not become a part of that conspiracy until later, does not render testimony that Cantu became a conspirator much earlier, inadmissible. It should be remembered that this was a joint trial of Cantu and Canedo. There was no error in allowing Zimmerman to testify as to when he first met Cantu, and the general nature of their relationship in the years preceding June and July, 1998. Such was clearly admissible as tending to show that Cantu was a part of this on-going conspiracy. It should be noted that Zimmerman did not testify in any detail whatsoever concerning events occurring between 1991 and June, 1998, though he was examined, and cross-examined, in detail concerning his contacts with Cantu and Canedo in June, 1998.

## II. Prosecutorial Misconduct

Canedo argues that the government prosecutor in his final closing argument to the jury indirectly commented on the fact that Canedo did not testify in his own behalf. Objection was made and the district court advised the jury that counsel's argument was not evidence, and that the jury should decide the case on the basis of the evidence adduced at trial. We find no reversible error. The statements were made to counter arguments made by counsel for Cantu and Canedo in their argument to the jury. There, of course, was no statement by the prosecutor that since neither Canedo nor Cantu had testified in their own defense, they must be guilty. Rather, in one instance the prosecutor made reference to the closing argument of Cantu's attorney which did not really relate to Canedo. The prosecutor did state that they had not searched Canedo's residence because

he had given the authorities more than one home address.  And he did argue that on July 14, 1998, Canedo and Cantu had followed Zazueta to the parking lot in order to "monitor" Zazueta's delivery of the methamphetamine to the undercover agent, none of which was improper under the circumstances.  Any alleged improper comment made by the prosecutor must be viewed in the context of the entire case.  *United States v. Begay,* 144 F.3d 1336, 1339 (10th Cir. 1998).  The present case is distinguishable from *United States v. Barton*, 731 F.2d 669 (10th Cir. 1984), relied on by Canedo.  In *Barton*, counsel indirectly commented on the defendant's failure to testify and directly commented on the defendant's post arrest silence.  Additionally, the trial court did not give a limiting instruction on the defendant's post arrest silence.

## III. Insufficient Evidence

Canedo contends that the evidence is insufficient to support his conviction.  His argument is confined to the sufficiency of the evidence as it relates to the July 14, 1998 delivery of methamphetamine by Zazueta to an undercover agent in the latter's automobile in the parking lot of a Food 4 Less Market.  (Counts 7 and 8).  There is no challenge, as we understand it, to his conviction on Courts 1 and 5, i.e., conspiracy and the deliveries in June, 1998 to Zimmerman.  In this regard, certainly Zimmerman's testimony, if believed by the jury, which it apparently was, is sufficient to sustain Canedo's conviction on those counts.  Zimmerman testified that Canedo "carried" the methamphetamine involved in the June activities.

As concerns the delivery on July 14, 1998, (Counts 7 and 8), we believe there is sufficient evidence, some direct and some circumstantial, to show that Cantu and Canedo were the "source" of the methamphetamine which Zazueta delivered to the undercover agent. The "surveillance" testimony supports such. Further, Cantu and Canedo followed the vehicle that Zazueta drove to the parking lot where the delivery occurred and they parked a short distance from the scene of the delivery. The obvious inference is that they were "monitoring" the delivery, no doubt wanting to make certain that they would get paid from the money which the undercover agent was to give Zazueta. And when searched, a firearm was found in Canedo's boot. In short, the record supports Canedo's conviction on Counts 7 and 8, as well as Counts 1 and 5.

Judgment affirmed.

ENTERED FOR THE COURT.

Robert H. McWilliams
Senior Circuit Judge